IN THE UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Angelica Mitchell, ) | |
| individually ) | |
| and on behalf of all persons ) | |
| similarly situated ) CASE NO 18 CV 7475 | |
| as class representative under ) | |
| Illinois Law and/or as ) | |
| members of the Collective as permitted ) | |
| under the Fair Labor Standards Act; ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| Electric Beach Tanning Salon Ltd., ) | |
| V F V Inc., Ultramax Industries, Inc and ) | |
| MICHAEL A VOJACK as an individual ) | |
| under the FLSA and Illinois Wage Laws ) | |
| ) **JURY TRIAL DEMANDED** | |
| ) **ON ALL COUNTS** | |
| Defendants. ) | |

**CLASS AND COLLECTIVE ACTION COMPLAINT**

NOW COMES the Plaintiff, Angelica Mitchell, individually and on behalf of all others similarly

situated, as a class representative, by and through her undersigned counsel of record, upon

personal knowledge as to those allegations in which she so possesses and upon information and

belief as to all other matters, pursuant to §216(b) of the Fair Labor Standards Act (hereinafter

"FLSA"), the Illinois Minimum Wage Law 820 ILCS 105/1 *et seq* (hereinafter "IMWL" ) and

brings this cause of action against Defendants Electric Beach Tanning Salon Ltd., V F V Inc.,

and Ultramax Industries, Inc., (hereinafter referred to as "Corporate Defendants")  and against

Defendant MICHAEL A VOJACK (hereinafter referred to as "VoJack") and in so doing states

the following:

## **NATURE OF THE ACTION**

1.  Plaintiff, Angelica Mitchell alleges individually and on behalf of herself and other similarly situated current, former and future employees of the Defendants, (Hereinafter references to "Plaintiff" are inclusive of both Individual Plaintiff and those employees that are similarly situated to the Individual Plaintiff) that she, under both federal and state wage laws, is entitled to be paid for all hours worked and to receive minimum wage for all hours worked and/or receive time and half for all hours worked over forty (40) hours per week.

2.  Plaintiff also brings a claim for overtime and minimum wage claims for off the clock work specifically that Plaintiff and other employees were ordered/required/deceived into continue working after the closing time of the Defendants' three retail locations with full knowledge and consent of the Defendants but she and the class were not paid for this work time and/or Defendants "Shaved" those hours/time from the employees paychecks and/or work hour records.

3.  Plaintiff also brings a claim for overtime and minimum wage claims for unpaid overtime worktime specifically that Plaintiff and other employees were not paid overtime due to Defendants paying wages via a scheme of paying through three "separate" corporations, despite the companies being joint employers or a single employer of the Plaintiff and class and Plaintiff and class working for all three corporations.

4.  Thus, via Defendants paying of its employees through three corporations, Plaintiff and class, were paid straight time, despite working over forty hours in a week.

5.  Lastly Plaintiff brings an individual claim for her last paycheck, under FLSA, IMWL and Illinois Wage Payment and Collection Act (IWPCA), Plaintiff is owed for her last week of work, 12/15/17 to 12/31/17, for which Plaintiff received no wages despite working 64.24 hours. Thus for this last week of work Plaintiff was not paid minimum wages and/or overtime wages.

6.  This action is brought as a class action pursuant to the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL") and Illinois Wage Payment and Collection Act 820 ILCS 115/1 *et seq.* (West 2002)) ("IWPCA").

7.  This action is also brought as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, 207 and 216(b) to recover unpaid wages for overtime pay and/or minimum wage pay due to the above described policy and procedures of the Defendants for three years prior to this filed complaint.

8.  Plaintiff's federal FLSA claims are brought as "opt-in" collective action claims pursuant to the FLSA; state law and common law claims are brought as a conventional class action.

9.  Plaintiff, in her class claims, request injunctive and declaratory relief, and compensation and credit for all uncompensated work required, suffered, and/or permitted by Defendants, liquidated and/or other damages as permitted by applicable law, restitution and payment of all benefits Defendants obtained from their unlawful business practices and attorneys' fees and costs.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28

U.S.C 1332 and 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 based on 29 U.S.C. 216(b) known as the Fair Labor Standards Act.

11. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C 1332 and 1367 and Plaintiff seeks application of the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL")Illinois Wage Payment and Collection Act 820 ILCS 115/1 *et seq.* (West 2002))("IWPCA" ).

12. The Court is authorized to issue a declaratory judgment.

13. Venue is proper in this Court.

14. Defendant does business and is a resident of this District and Division of Federal Court.

## FACTS REGARDING THE PLAINTIFF

15. Plaintiff, Angelica Mitchell, is a resident of the State of Illinois and a former employee of all three Defendant corporations.

## DEFENDANTS' CORPORATE FACTS

16. Defendants Electric Beach Tanning Salon Ltd., V F V Inc., and Ultramax Industries, Inc are corporations or businesses which do business in Illinois.

17. Defendants Electric Beach Tanning Salon Ltd., V F V Inc., and Ultramax Industries, Inc operate three retail tanning facilities in Northwest suburbs of Chicago in Illinois.

18. Defendants employ a staff of some full time employees and a larger number of part time employees, Plaintiff estimates that more than 50 employees work for Defendants during the relevant period of time.

## JURISDICTION

### JURISDICTION BASED ON GROSS SALES

### DEFENDANTS GROSS SALES EXCEED $500,000

19. Defendants are three corporations which operate three retail tanning facilities located in the Northwest suburbs of Chicago in Illinois.

20. Defendants combined operations exceed sales of $500,000.00.

21. Defendants sales exceed $500,000 as shown by the following:

   a. Defendants operate three retail locations each employing a large number of employees, with a total work force believed to over 20 employees at any one time.

   b. An on-line business estimator, for just one Defendant, placed the sales for one retail location in excess of $300,000, thus clearly three locations have sales greater than $500,000

### ADDITIONAL JURISDICTION IS ESTABLISHED VIA ENGAGEMENT IN

### COMMERCE BY ALL DEFENDANTS

### DEFENDANTS ARE ENTERPRISES THAT REGULARLY AND RECURRENTLY HAVE AT LEAST TWO EMPLOYEES ENGAGED IN COMMERCE

### AND/OR INDIVIDUAL FLSA JURISDICTION

22. Each of the Defendants, all Defendants, are enterprises that regularly and recurrently have at least two employees engaged in commerce.

23. Each of the Defendants, all Defendants, are enterprises that regularly and recurrently have at least two employees engaged in commerce, this engagement in

commerce includes but is not limited to the sale of retail items to customers of the tanning salons and/or the general public.

24. The Defendants offer retail items which were initially purchased by Defendants, transported to the Defendants retail locations, stored on the Defendants premises, placed on retail shelfs within the Defendants locations, offered as items for resale to the ultimate customers, and finally sold by Defendants to customers in the Defendants' retail locations, including sales of those retail items by Plaintiff.

25. Further Plaintiff and Class engaged in commerce via processing of sales to ultimate customers via use of those customers' credit cards which occur multiple times a day, thus via the use of credit cards, and transmittal of those transactions from state to state, the Plaintiff and class engaged in commerce, these credit card transactions were/are for both tanning services as well as retail products.

26. Sales of the retail items and tanning services is not inconsequential rather are thousands of dollars a week at each location for each Defendant.

27. The Department of Labor has also endorsed the multiple-employee interpretation. 29 C.F.R. § 779.238 (stating that an employer is an enterprise if "during the annual period which it uses in calculating its annual sales . . . it regularly and recurrently has at least two or more employees engaged in [commerce]").

28. Such protection provides yet another means to find coverage under the FLSA. see **Ethelberth v. Choice Sec. Co**., 91 F. Supp. 3d 339 at 354  (DC, ED New York 2015)

29. "*all* of the employer's employees are covered under [FLSA] as long as at least *some* handle, sell, or otherwise work on goods or materials that have been moved

in or produced for commerce." **Jones v. E. Brooklyn Security Services Corp.,** No. 11-CV-1021, 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012) (quoting 29 U.S.C. § 203(s)(1)(A)).

30. Courts have found this element satisfied where employees "merely handled supplies or equipment that originated out-of-state." **Rodriguez v. Almighty Cleaning, Inc**., 784 F.Supp.2d 114, 354*354 120 (E.D.N.Y.2011). Enterprise coverage "applies so long as some of the employees wear uniforms or use items such as radios, books, flashlights, clipboards, brooms, bags, and cleaning supplies that have moved in interstate commerce." **Archie v. Grand Cent. P'ship,** 997 F.Supp. 504, 531-32 (S.D.N.Y.1998) (listing cases)).

31. Here Plaintiffs used computers, tanning equipment, brooms, bags, and cleaning supplies that moved in interstate commerce.


**DEFENDANTS OPERATE THREE INTERCONNECTED BUSINESSES IN A**

**SCHEME TO AVOID PAYING OVERTIME**

**AND DEFENDANTS' ARE JOINT EMPLOYERS**

**AND/OR A SINGLE EMPLOYER**


32. Defendants Electric Beach Tanning Salon Ltd., V F V Inc., and Ultramax Industries, Inc operate three retail tanning facilities in Northwest suburbs of Chicago in Illinois.

33. Defendants are joint employers with the other Defendants as the three corporations operate three retail tanning facilities which operate as a single entity.

34.     All three of the Defendants are joint employers and/or operate under the same management.

35.     The joint employer and joint operations of the Defendants are demonstrated by the work of Plaintiff as well as the Class.

36.     Plaintiff worked for all three of the Defendants, doing the same work for all three, that work included: customer service, customer sales, scheduling of customer appointments, answering phones, cleaning the retail facilities and performing many other tasks for ALL the Defendants for which she received a pay check.

37.     The joint employer and joint operations of the Defendants are also demonstrated by the wages paid to Plaintiff. Plaintiff received bi-monthly pay checks from all three of the Defendants.

38.     Defendant MICHAEL A VOJACK is named as a Defendant pursuant to the FLSA, IMWL and IWPCA as these managers/owners were the ultimate decision makers for the various wage violations.

39.     The Individual Defendants were the owners/managers who decided to or approved of the decision to create three "separate" corporations and/or to shave employees work hours.

**JOINT EMPLOYER FACTS**

40.     All three Defendants should be treated as a single employer because the following shared aspects:

    a.  All three Defendants operate from the same business address, 3 Cutters Run, South Barrington, ILL
    b.  All three businesses use the same information on the Illinois secretary of state website for registration.

8

    c.   All three have the same President, Michael Vojack.

    d.   All three have the same secretary, Michael Vojack.

    e.   All three have the same service agent, Michael Vojack.

    f.   All three operate the same type of business: a tanning salon, though at three different locations.

    g.   All three salons operate in the same manner, sharing policy and procedures, employees, and management resources.

    h.   All three are owned by the same person(s)(believed to be Michael Vojack).

    i.   All three share control over operations (e.g., hiring, firing, payroll, advertising, overhead costs);

    j.   All three inter-mingled operations  (e.g.  one administrative operation for all three employers, one person scheduling and paying the employees regardless of which employer they work for);

    k.   All three share supervisory authority over the employees;

    l.   All three treat employees as a pool of employees available to all three companies;

    m.   All three shared clients or customers;

41.    The joint employer and joint operations of the Defendants are demonstrated by the work of Plaintiff. Plaintiff worked for each and all of the Defendants for which he received a paychecks from each Defendant each payperiod and did work for each Defendant at all three locations.

42.    The Department of Labor regulations provide guidance as to when a joint employer relationship exists:

Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as: (1) Where there is an arrangement between the employers to share the employee's services, as for example, to interchange employees; or

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reasons of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 .F.R. § 791.2(b).

43.    Here the Defendants share employees' services, in that both corporations operate under the same management and facilities, and employees for one corporation does work for and by direction of the other corporation.

44.    Plaintiffs and Collective work and efforts were given for the benefit of all the employers.

45.    A determination of whether employment by a group of employers is to be considered joint employment or separate and distinct employment for purposes of the FLSA, however, depends upon all the facts in the particular case. 29 C.F.R. § 791.2(a)

46.    Joint employment is supported further by the sharing of facilities and other management employees.

47.    For example the Owner/Manager of the Defendants, Michael Vojack, also managed all three Defendant locations.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

### A.    Class Allegations under IMWL

48. Plaintiff brings state wage law claims, pursuant to the Illinois Minimum Wage Law (IMWL) 820 ILCS 105, as individual and class action.  The IMWL Class is defined as all current, former and future employees of all three Corporate Defendants paid an

hourly wage less than minimum wage and/or not paid overtime wages for overtime hours and/or not paid the proper rate of overtime pay for all hours over forty per week, via the policy and procedure of Shaving work hours to the retail hours of the Defendants operations, (rather than to the actual hours of work) and/or the policy and procedure of Defendants to pay via three allegedly separate corporations, which actually are one employer, thereby denying the IMWL class owed overtime wages and/or payment of the proper overtime rate.

49. Plaintiff's IMWL Class includes claims for all owed wages due for three (3) years prior to the filling of this complaint and until a judgment is entered in this case (the "Class" and "Class Period," respectively) (hereinafter, "Plaintiff" or "Plaintiffs" refers to both Named Plaintiff and the IMWL Class).

50.    Excluded from the Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class and/or all properly salaried employees of Defendants.

51.    **Numerosity:** The persons in the Class identified above are geographically diverse and so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants.  Upon information and belief, there are hundreds of members of the Class based upon the fact that during the Class Period

the Defendants employed from 50-100 employees. The numerosity is also demonstrated by the DEFENDANTS having a work force of 30-50 employees at any one time and due to the high "turnover" of these positions the number of potential class members is increased substantially. It is estimated that there are at least 200 persons in the IMWL Class.

52.     **Commonality**: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members.  The questions of law and fact common to this Class that predominate over any question solely affecting individual members of the Class, including but are not limited to:

   a.   whether the Defendants employed Plaintiff and the Class within the meaning of the IMWL.

   b.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records

   c.   whether the Plaintiff and the Class were paid overtime wages pursuant to the overtime provisions of the IMWL

   d.   whether Defendant's engaged in a continuing policy, pattern or practice of failing to pay all overtime wages at the proper rate of pay which includes all compensation;

   e.   whether Defendants' engaged in a policy and procedure of Shaving work hours to the retail hours of the Defendants operations, (rather than to the actual hours of work)

   f.   whether Defendants engaged in a policy and procedure of Defendants paying via three allegedly separate corporations, which actually are one employer,

thereby denying the IMWL class owed overtime wages and/or payment of the proper overtime rate.

53.    **Typicality**:    The claims of Representative Plaintiff are typical of the IMWL Class.

54.    **Adequacy:** Representative Plaintiff will fairly and adequately represent the interests of the IMWL Class.

55.    **Superiority:** A class action is superior to other available methods for their fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation, where individual Plaintiff lack the financial resources to vigorously prosecute separate lawsuits in Court against corporate Defendants like Defendants.

56.    The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

57.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in Federal Court against the corporate Defendant.

58.    The Defendant has acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

59.     IMWL violation claims are brought and maintained as a class for all IMWL claims asserted by the Plaintiff.

60.     The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

61.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in against the corporate Defendant.

62.     The Defendant has acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**B.      Class Allegations under the IWPCA**

63. Plaintiff brings state wage law claims, pursuant to the Illinois Wage Payment and Collection Act (IWPCA), as an individual and class action.  The IWPCA Class is defined as all current, former and future employees of all three Corporate Defendants to whom Defendants violated the following IWPCA "Agreements":

   a.   Defendants and Plaintiff/Class had Agreed that Plaintiff and class would be paid for all hours worked, yet Defendants secretly Shaved hours from the Classes wages, via clocking employees out at the close of business, rather than when the employees stopped working.

   b.   Defendants and Plaintiff/Class had Agreed to a set-rate-of-pay yet by shaving work time, Defendants violated the Agreement to pay a Set-Rate-Of-Pay by

paying less per hour. (For extreme illustrative example: if an employee were paid $8.25 for 10 hours, but Plaintiff worked 20 hours, resulting in payment of a mere $4.125 per hour, not the Agreed-To rate of pay of $8.25 per hour).

c.   Further Plaintiff and Class are to be paid via IWPCA's statutory requirement to pay all hours worked.

64. Plaintiff's IWPCA Class includes claims for all owed wages due for five (5) years for oral agreements (from today to approximately November of 2013) and ten (10) years (from today to approximately November of 2008) for written agreements prior to the filling of this complaint and until a judgment is entered in this case (the "Class" and "Class Period," respectively) (hereinafter, "Plaintiff" or "Plaintiffs" refers to both Named Plaintiff and the IWPCA Class).

65.   Excluded from the Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class and/or all properly salaried employees of Defendants.

66.   **Numerosity:** The persons in the Class identified above are geographically diverse and so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants.  Upon information and belief, there are hundreds of members of the Class based upon the fact that during the ten year Class Period the Defendants employed from 100-500 employees. The numerosity is also

demonstrated by the DEFENDANTS having a work force of 30-50 employees at any one time and due to the high "turnover" of these positions the number of potential class members is increased substantially. It is estimated that there are at least 200 persons in the IWPCA Class.

67.     **Commonality**: There are numerous questions of law and fact common to the Class that predominate over any questions affecting only individual members.  The questions of law and fact common to this Class that predominate over any question solely affecting individual members of the Class, including but are not limited to:

    a.  whether the Defendants employed Plaintiff and the Class within the meaning of the IWPCA.

    b.  what proof of hours worked is sufficient where employers fail in their duty to maintain time records

    c.  whether the Plaintiff and the Class were paid:

        i.  For all hours worked, and if Defendants secretly Shaved hours from the Classes wages, via clocking employees out at the close of business, rather than when the employees stopped working

        ii.  At the Agreed-rate-of-pay, or if by shaving work time, Defendants violated the Agreement to pay a Set-Rate-Of-Pay by paying less per hour.

        iii.  Via IWPCA's statutory requirement to pay all hours worked.

68.     **Typicality**:   The claims of Representative Plaintiff are typical of the IWPCA Class.

69.    **Adequacy:** Representative Plaintiff will fairly and adequately represent the interests of the IWPCA Class.

70.    **Superiority:** A class action is superior to other available methods for their fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation, where individual Plaintiff lack the financial resources to vigorously prosecute separate lawsuits in Court against corporate Defendants like Defendants.

71.    The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

72.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in Federal Court against the corporate Defendant.

73.    The Defendant has acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

74.    IWPCA violation claims are brought and maintained as a class for all IWPCA claims asserted by the Plaintiff.

75.    The Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

76.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of this litigation where no individual employee can justify the commitment of the large financial resources to vigorously prosecute a lawsuit in against the corporate Defendant.

77.     The Defendant has acted or has refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**C. The FLSA Collective Action**

78.     Plaintiff brings claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA (29 U.S.C. § 216(b)), on behalf of all employees of DEFENDANTS who were, are, or will be employed by DEFENDANTS during the period of three (3) years prior to the date of commencement of this action through the date of judgment in this action, who were not compensated at one-and-one-half times the regular rate of pay for all work performed in excess of forty (40) hours per work week and/or who were not compensated at the federal minimum wage rate of $7.25 per hour, via the Defendants' policy and procedure of Shaving work hours to the retail hours of the Defendants operations, (rather than to the actual hours of work) and/or the policy and procedure of Defendants to pay via three allegedly separate corporations, which actually are one employer, thereby denying the FLSAS Collective owed overtime wages and/or minimum wages and/or payment of the proper overtime rate.

79.     FLSA violation claims are brought and maintained as an "opt-in" collective action pursuant to § 16(b) of FLSA, 29 U.S.C. § 216(b), for all FLSA claims asserted by the Plaintiff, since the FLSA claims of the Plaintiff are similar to the FLSA claims of all hourly employees employed by Defendants.

80.     Defendant is liable for improperly compensating Plaintiff and FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are numerous similarly situated current and former employees of DEFENDANTS who have been denied proper payment of the overtime wages. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

## STATEMENT OF FACTS

**A.      DEFENDANTS policies and procedures and Compensation Practices fail to pay overtime wages for overtime work hours and/or pay proper overtime rate of pay and/or Minimum Wage of the Plaintiff, Class and Collective**

81.     Plaintiff was employed by DEFENDANTS as an hourly employee of ALL three Defendants and Plaintiff, who worked beyond forty hours, but for which Defendants failed to pay overtime at the proper and correct rate of pay.

82.     Plaintiff worked as an hourly non-exempt employee.

83.     Plaintiff was paid $8.25 per hour of those hours paid as a base rate of pay, with increases in her rate of pay due to commissions and/or bonuses.

84.   Plaintiff was not paid any overtime wages at any time; this was achieved by Defendants via the scheme of paying through three separate corporations, which should be considered the same single employer.

85.   Additionally, Plaintiff was not paid for all work time, thus Plaintiff was not paid proper and complete minimum wage and overtime wages.

86.   Plaintiff estimates that she worked between 10-20 hours off-the-clock each paycheck and/or each two-week period.

87.   This off-the-clock work occurred when the Plaintiff and other employees work hours were shaved, by Defendants, owners, and/or managers, to match the closing time of the Defendants retail locations, rather than the actual work time of the Plaintiff and class.

88.   Plaintiff and other employees were not paid for work after closing time despite performing the work for Defendants benefit and with Defendants' full knowledge of the work.

89.   This type of wage theft is generally known as "Shaving" of work hours.

90.   In terms of the working past scheduling, this off-the-clock work occurred every shift or almost every shift.

**DEFENDANTS FAIL TO PAY OVERTIME VIA A SCHEME OF PAYING WAGES THROUGH THREE DIFFENT ENTITIES, WHICH SHOULD BE THE ONE EMPLOYER**

91.   Defendants, all three corporations, also fail to pay for overtime work and work hours via a scheme of paying employees through three different companies, but all three operate and legally should be considered one employer.

WEEK BY WEEK ALLEGATIONS

92.  As some District Court Judges require allegations that demonstrate a FLSA overtime and/or minimum wage claim, on a weekly basis, Plaintiff provides the following allegations.

93.  For the pay period of 9/16/17 to 9/30/17 Plaintiff was paid 26 hours, 35.30 hours and 40.00 hours by the three corporations for a total of 101 hours for the three corporations for this two week pay period.

94.  Plaintiff was not paid overtime wages for the overtime hours worked during this two week period. (80 hours less 101 paid = 21 hours of overtime for this two week period).

95.  This practice of separate payrolls results in failures to pay overtime at all, and failure to pay at the proper rate of pay.

96.  The failure to pay proper rate applies to all employees of Defendants, in a similar manner as it deprived Plaintiff of overtime wages.

97.  Additionally, for the period of 9/16/17 to 9/30/17, Plaintiff worked off the clock an additional 1-2 hours, via Defendants policy and procedure of clocking Plaintiff (and class) out at closing time, rather than when work is completed.

98.  The off the clock time also demonstrates the Plaintiff's and classes minimum wages claims, as Plaintiff paid Plaintiff for 101.0 hours X $8.25 = $833.25, but Plaintiff worked approximately 103 hours, thus Plaintiff was paid less than $8.25 per hour.

99.  Likewise, for 9/1/17 to 9/15/17, the Defendants splitting Plaintiff's work hours between three corporations results in Defendants failing to pay overtime wages for Plaintiff and other employees.

100. Plaintiff's paid hours for 9/1/17 to 9/15/17 were as follows: 17 hours, 44 hours, and 39.30 hours for the three corporations, via three separate checks.

101. Thus Plaintiff was paid a total of 100.3 paid hours for the three Defendants, however, by paying via three separate companies Defendants failed to pay Plaintiff 20.3 hours of overtime at an overtime rate of pay.

102.   Additionally, for the period of 9/1/17 to 9/15/17, Plaintiff worked off the clock an additional 1-2 hours, via Defendants policy and procedure of clocking Plaintiff (and class) out at closing time, rather than when work is completed.

103.   The off the clock time also demonstrates the Plaintiff's and classes minimum wages claims, as Plaintiff paid Plaintiff for 100.3 hours X $8.25 = $827.47, but Plaintiff worked approximately 103 hours, thus Plaintiff was paid less than $8.25 per hour.


104.   The Defendant's unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

105.   Defendant's consented, were knowledgeable of that they were paying the overtime rate of pay incorrectly.

106.   Plaintiff is paid on an hourly pay rate and is classified as "non-exempt" employee by Defendant.

107.   Plaintiffs and the class employees were not paid the proper rate of overtime wages.

108.   This is a FLSA violation because the Plaintiff works beyond forty (40) hours, thus Plaintiff is owed time-and-half of her regular pay for ALL hours beyond 40.

109.   Further that by forcing her to work off the clock, this is a violation of the Plaintiff's rights under FLSA as she was not paid at time-and-half during these hours and rather is paid nothing for this work time.

110.    Further this also a violation of the Plaintiff's rights under Illinois Minimum Wage law and Illinois over-time wage law and IWPCA.

111.    The FLSA defines the "regular rate" as all remuneration for employment paid to or on behalf of the employee, before any deductions from wages are made. (See 29 U.S.C. §207(e); 29 C.F.R. §778.109.)

### DEFENDANTS's Actions were Willful, Knowledgeable and/or Had Reckless Disregard for FSLA Regulations

112.    DEFENDANTS required and permitted Plaintiff, the Class, and the FLSA Collective, to work more than 40 hours in a week. DEFENDANTS did not pay Plaintiff, the Class, and the FLSA Collective the proper overtime rate for all overtime hours and/or minimum wage hours.

113.    DEFENDANTS unlawful conduct has been uniform, widespread, repeated and consistent.

114.    Defendants' willful violations are especially demonstrated by their knowledge that its employees were not paid the correct rate of pay.

115.    All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law and permitted under Federal Law, Illinois Law and other state laws.

116.    All allegations plead herein are plead with personal knowledge as to those allegations to which Plaintiffs have such knowledge and based upon "information and belief" as to all other allegations.

### FIRST CLAIM FOR RELIEF
**Class Action Against Defendants**
**Under the Illinois Minimum Wage Law "IMWL"**

117.    Plaintiff  realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

118.    Plaintiff was an employee of the Defendant pursuant to the IMWL.

119.    Plaintiff was employed by DEFENDANTS as an employee.

120.    It is and was at all relevant times, a policy of DEFENDANTS to pay its employees at an overtime rate of pay and/or minimum wage pursuit to the Defendants' improper shaving policy and procedures and/or off-the-clock work, and/or scheme of paying via three corporations.

121.    It is a policy, procedure and job requirement of Defendant DEFENDANTS its employees to pay its employees at an overtime rate of pay via its scheme of paying via three corporations, and/or shaving work hours.

122.    The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting most if not all of the Defendant's employees.

123.    As a result of the foregoing, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

124.    Illinois law contains a three-year statute of limitations regardless of whether the violation was willful. 820 ILCS 105/12(a).

## SECOND CLAIM

**Class Action Against Defendants**
**Under Illinois Wage Payment and Collection Act "IWPCA"**

125.    Plaintiff realleges and incorporate by reference all the preceding paragraphs, as if fully set forth herein.

126.    Plaintiff was employed by Defendants.

127.    It is and was at all relevant times, a policy of DEFENDANTS to take, without Agreement wages and work time.

128.    The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

129.    Plaintiff brings her claims for relief pursuant to the IWPCA as a class action for all employees who were, are, or will be employed by Defendants during the period of date five years (for oral contracts) and/or ten years (for written contracts) prior to the filing of this complaint of this action through the date of judgment in this action, failed to pay all Agreed Wages via a policy of DEFENDANTS to take, without Agreement wages and work time from the class.

130.    IWPCA violation claims are brought and maintained as a class action pursuant to Illinois Code of Civil Procedure 735 ILCS 5/2-801-806, for all IWPCA claims asserted by the Plaintiff.

131.    This cause of action arises out of employment contracts or agreements; written and/or oral.

132.    The named Plaintiffs were employed by Defendant.

133.    The Defendants unlawful conduct was and is not inadvertent, de minimis, isolated or sporadic, but widespread, repeated and part of a pattern and practice of conduct affecting all Defendants' employees.

134.    Upon information and belief, all class employees of the Defendant had the same policies imposed upon its employees.

135.    Plaintiffs are or were under the control and direction of the owner of the Defendant and/or his agents during the period of the Plaintiff employment under their contracts of service and in fact.

136.    Plaintiff was not an independent contractor, rather was an employee of the Defendant by oral agreement and/or written contract.

137.    Plaintiff's employment were in the usual course of business for which such service is performed.

138.    Plaintiff does not possess a proprietary interest in the Defendant.

139.    The Defendants are "employers" under the terms of the IWPCA section 2.

140.    In accordance with IWPCA, an employer is also defined as: "any officer of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation".

141.    Individual Defendant MICHAEL A VOJACK is named as an employer, as he knowingly permitted violations of the IWPCA.

**THIRD CLAIM FOR RELIEF**
**On Behalf of Plaintiff and All Opt-In Employees**
**Against Defendant Defendants**
**As a Collective Action**
**(FLSA Claims, 29 U.S.C. § 201 et seq.)**

142.    Plaintiff realleges and incorporates by reference all the preceding paragraphs, as if fully set forth herein.

143.    The Collective claims include all plead claims found in this complaint which fall within the coverage of FLSA.

144. The Collective claims include all employees which Defendant has failed to pay at an overtime rate of pay and or minimum wages.

145. At all relevant times, Defendant DEFENDANTS has been, and continues to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has employed, and continues to employ, "employee[s]," including the Plaintiff, and each of the members of the FLSA Opt-Ins, that have been, and continue to be, engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants has had gross operating revenues in excess of Five Hundred Thousand and no/100 Dollars ($500,000.00).

146. At all relevant times, Defendants has engaged, and continue to engage, in a willful policy, pattern, or practice of requiring their employees, including the Plaintiffs and members of the prospective FLSA Class, to work in excess of forty (40) hours per week without compensating such employees to pay its employees at an overtime rate of pay which does not include the added compensation earned as commissions or earned bonuses.

147. At all relevant times, the work performed by retail employees including the Plaintiffs and prospective FLSA Opt-Ins, employed at Defendant were, and continue to be, required or permitted by Defendants, for the benefit of Defendants, directly related to such employees' principal employment with Defendants, and as an integral and indispensable part of such employees' employment of Defendants.

148.   As a result of the Defendant willful failure to record or compensate its employees – including Plaintiff and members of the prospective FLSA Class – employed by Defendant for all hours worked, Defendant has violated, and continues to violate, the maximum hours provision of the FLSA, 29 U.S.C. § 207(a)(1), and § 215(a).

149.   As a result of the Defendant's willful failure to record, report, credit, and/or compensate its employees employed by Defendant, including the Plaintiffs and members of the prospective FLSA Class, Defendant has failed to make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, including 29 U.S.C. §§211(c) and §§ 215(a).

150.   The foregoing conduct, as alleged, violated the FLSA, 29 U.S.C. §§ 201 et seq.

151.   Plaintiff, on behalf of herself and all FLSA Opt-Ins, seek damages in the amount of their respective unpaid compensation, plus liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

152.   Plaintiff, on behalf of herself and all FLSA Opt-Ins, seek recovery of attorneys' fees and costs of action to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

153.   Plaintiff has consented to be a party to this action, pursuant to 29 U.S.C. § 216(b).

154.   At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were employed by Defendant within the meaning of the FLSA.

155.   At all times relevant to this action, Plaintiff and all FLSA Opt-Ins were engaged in commerce and/or the production of goods for commerce and/or Defendant

were an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

156.    Due to Defendant's FLSA violations, Plaintiff and all FLSA Opt-Ins are entitled to recover from Defendant their unpaid compensation, an additional equal amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b)§ 6 of the Fair Labor Standards Act, 29 U.S.C.A. § 206, 9 FCA title 29, § 206, provides that every employer shall pay to each of his employees who is engaged in interstate or foreign commerce or in the production of goods for such commerce, wages at specified hourly rates.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the IWML Class, IWPCA Class, and the FLSA Collective, pray for the following relief:

A.      That, at the earliest possible time, the Plaintiff be allowed to give notice of these class actions, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years and/or five years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of Court-supervised notice, as alleged herein this complaint. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to "opt out" of this lawsuit if they believe they were paid all wages due.

B.      That, at the earliest possible time, the Plaintiff be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up

through and including the date of this Court's issuance of Court-supervised notice, to employees whom have been employed by the Defendants and as alleged herein this complaint. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join in this lawsuit if they believe they were not paid all wages for work performed.

C.  Unpaid wages and liquidated damages pursuant to 29 U.S.C. § 201 et seq. and the supporting an Illinois Department of Labor and United States Department of Labor regulations;

D.  Unpaid regular wages, and overtime wages pursuant to the IMWL, IWPCA and other state wage laws;

E.  Compensation originating from DEFENDANTS company policies, contractual obligations and ERISA requirements owed as a result of unpaid overtime wages;

F.  An injunction requiring Defendants to pay all statutorily-required wages pursuant to Illinois Law;

H.  Certification of this case as a Class action and/or Collective action;

I.  Designation of the Plaintiff as representative of the Class and/or Collective, and counsel of record as Class Counsel;

J.  Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 et seq. and supporting Illinois Department of Labor regulations and other state wage laws;

K.  Attorneys' fees and costs of this action in accordance with FLSA and Illinois Wage Laws; and

L.      Attorneys' fees in accordance with all applicable laws, Illinois Law and pursuant to 705 ILCS 225/1; the Illinois Attorneys Fees in Wage Actions Act

L.      Unpaid wages and liquidated damages pursuant to IWPCA and the supporting Illinois Department of Labor regulations;

C.      Liquidated damages in accordance with the IWPCA in the amount of 10 days of wages for each class member;

E.      Consequential damages;

I.      Additional compensation/penalty due to the Plaintiff in accordance with Section 14(b) of the IWPCA in the amount of 2% per month (up to an amount to twice the sum of unpaid wages) due under the IWPCA for the delay in payment of due wages;

J.      Issuance of a Declaratory Judgment that the practices complained of in this Complaint are unlawful under Illinois Law, 820 ILCS 105/1 *et seq* and supporting Illinois Department of Labor regulations;.

L.      and costs of this action; and

L.      Such other relief as this Court shall deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: November 12, 2018                    Respectfully submitted,


By:       -S-John C. Ireland
                John C. Ireland

                Attorney for the Plaintiffs and Class

The Law Office Of John C. Ireland
636 Spruce Street
South Elgin ILL  60177
 630-464-9675        Facsimile 630-206-0889                    attorneyireland@gmail.com